```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF KENTUCKY
              NORTHERN DIVISION AT COVINGTON
```

CIVIL ACTION NO. 2:20-0016 (WOB-CJS)

TARA BLESSING, ET AL.                                    PLAINTIFFS

VS.                  MEMORANDUM OPINION AND ORDER

SUJANA S. CHANDRASEKHAR,
MD, FACS                                                 DEFENDANT

This matter is before the Court on defendant's motion to dismiss (Doc. 12), plaintiffs' response thereto (Doc. 18), and defendant's reply (Doc. 19).

The Court has carefully reviewed this matter and concludes that oral argument is unnecessary. It therefore issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

This case is one of numerous lawsuits filed in the wake of a widely publicized encounter between a group of students from Covington Catholic High School ("CCH") and Native American Nathan Phillips near the Lincoln Memorial in Washington, D.C. on January 19, 2019.

Plaintiffs are CCH students who were present at that event. (Compl. ¶ 2). They filed this lawsuit against defendant Sujana S. Chandrasekhar, a citizen of New Jersey who posted about the students on Twitter the day after the incident. Specifically,

defendant tweeted a collage of the faces of CCH students, including plaintiffs, with the following text:

> These are scary faces, indeed. #CovingtonShame 1. Stop tax breaks for 'religious' establishments. 2. Massive re-education is needed, for these children, their families, and their communities. 3. I hope they don't get to use their #whiteprivilege (except 23) like #Kavanaugh did.

(Doc. 1 at 11). At the bottom right corner of the collage, it states: "Do you know them?  The world would like to know too."

Plaintiffs refer to the collage as a "Wanted Poster," and they allege that it went "viral" and was part of a "doxing and harassing campaign" by defendant. (Compl. ¶¶ 11-13).  They further allege that defendant's "campaign" was a "call to action" in Kentucky "for recipients to engage in harmful criminal and civil behavior towards the Plaintiffs."  (Compl. ¶ 14).

Plaintiffs allege the following causes of action: (1) Civil Harassment under KRS 525.070; (2) Civil Harassing Communications under KRS 525.080; (3) Civil Threatening under KRS 525.080; (4) Civil Menacing under KRS 525.050; (5) Invasion of Privacy; and (6) Aiding and Abetting.

Defendant has filed a motion to dismiss, arguing, among other things, that the Court lacks personal jurisdiction over her for plaintiffs' claims.  (Doc. 12).

As plaintiffs acknowledge, their opposition to defendant's motion mirrors their response to a similar motion in *Doe v.*

2

*Griffin*, Cov. Civil Case No. 19cv126, a related case in which this Court granted the defendant's motion to dismiss for lack of personal jurisdiction. Seeing no need to reinvent the wheel, the Court will therefore draw on its opinions in the *Griffin* case to resolve the current motion expeditiously.

### *Analysis*

When a federal court sits in diversity, it may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so. *My Retirement Account Servs. v. Alternative IRA Servs., LLC*, Civil Action No. 5:19-CV-122, 2019 WL 5298718, at *3 (W.D. Ky. Oct. 17, 2019) (citation omitted).

The proper analysis of long-arm jurisdiction over a nonresident defendant under Kentucky's long-arm statute, Kentucky Revised Statute § 454.210, consists of a two-step process. *Caesars Riverboat Casino, LLC v.* Beach, 336 S.W.3d 51, 57 (Ky. 2011). The court must first determine whether the cause of action arises from the type of conduct or activity that is enumerated in one of the nine sections of KRS 454.210. *Id.* If the defendant's alleged conduct does not fall within any category listed in the statute, she is not subject to personal jurisdiction in Kentucky. *Id.* If the conduct is within an enumerated category, the court then must assess whether "exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id.*

3

### A. Kentucky Long-Arm Statute

Plaintiffs rely on KRS 454.210(2)(a)(3), which provides for personal jurisdiction over a defendant who causes "tortious injury by an act or omission in this Commonwealth," where the claim arises out of such act or omission. Plaintiffs argue that defendant's tweet was an act committed in Kentucky because it was a "doxing and harassment campaign" designed to cause third parties to take tortious actions against plaintiffs in this forum. (Compl. ¶¶ 12-17).

Kentucky law, however, is to the contrary. "Kentucky courts routinely find that a defendant must be present in the Commonwealth when he starts an action that causes a tort in order for section 454.210(2)(a)(3) to apply." *Crum v. Estate of Mayberry*, Civil No. 14-84-ART, 2014 WL 7012122, at *5 (E.D. Ky. Dec. 11, 2014).

In *Crum*, the court found that it did not have personal jurisdiction over a defendant who plaintiff alleged stole money from his bank account. The defendant resided in Michigan and, while his acts caused plaintiff harm in Kentucky, the unlawful withdrawals occurred in Michigan. *Id.* The Court cited *Pierce v. Serafin*, 787 S.W.2d 705 (Ky. Ct. App. 1990), in which the Kentucky Court of Appeals "found that a defendant did not commit an act in the Commonwealth when he sent a letter from outside the state that contained statements that caused injury in Kentucky." *Id.*

4

The *Pierce* court emphasized the distinction between tortious *actions* and tortious *consequences*, and it held that it is the former that must occur within the Commonwealth to satisfy KRS 454.210(2)(a)(3). *Pierce*, 787 S.W.2d at 706.

This reasoning is routinely employed by federal courts applying the Kentucky long-arm statute. *See Management Registry, Inc. v. Cloud Consulting Partners, Inc.*, Civil Action No. 3:19-CV-00340, at *4 (W.D. Ky. Sept. 18, 2019) ("Since the Kentucky Supreme Court's decision in *Caesars Riverboat Casino, LLC v. Beach*, several cases have rejected the argument that an out-of-state defendant commits an 'act or omission in this Commonwealth' by sending a tortious communication into Kentucky."); *My Retirement Account Servs. v. Alternative IRA Servs., LLC*, Civil Action No. 5:19-CV-122, 2019 WL 5298718, at *4 (W.D. Ky. Oct. 17, 2019) (finding no personal jurisdiction under KRS 454.210(a)(3) where plaintiffs alleged that the actions of California defendants were directed at, and caused harm in, Kentucky); *Perkins v. Bennett*, Civil Action No. 3:13-CV-695, 2013 WL 6002761, at *6-7 (W.D. Ky. Nov. 12, 2013) (holding that out-of-state defendant did not commit an act within Kentucky where the alleged tortious acts of fraud and misrepresentation were committed via telephone and email from South Carolina); *Barker v. Collins*, Civil Action No. 3:12-CV-372-S, 2013 WL 3790904, at *5 (W.D. Ky. July 19, 2013) (finding that

plaintiffs' claims of "extortion by telephone" were not "acts" in Kentucky that could trigger section 2(a)(3)).

As the court noted in *Barker*, subsection (a)(4) of the Kentucky long-arm statute ("causing a tortious injury in this Commonwealth by an act or omission outside this Commonwealth") "would be completely obviated" if plaintiffs' theory were accepted, since "every set of facts which gave rise to tortious injury could be brought within the terms of paragraph three (3)." *Barker*, 2013 WL 3790904, at *5.

In addition, the following observation by the Court in *Crum* is equally applicable here:

> The plain language of section 454.210(2)(a)(3) makes it difficult to bring cases against identity thieves or hackers who operate remotely to injure Kentucky residents. But the Kentucky legislature made its choice when it drafted the statute. The Court must respect that choice. The legislature can always expand the reach of the long-arm statute to catch additional torts, like those involving internet banking. The legislature has done so in the past; after all, the last prong of the long-arm statute specifically mentions torts committed using a "telephone solicitation" as grounds for exercising jurisdiction over a foreign defendant. *See* Ky. Rev. Stat. § 454.210(2)(a)(9). In the meantime, the Court has no basis to exert jurisdiction over [defendant] as [plaintiff] does not claim that he committed a harmful act in Kentucky.

*Crum*, 2014 WL 7012122, at *5.

So too here. Should the legislature wish to broaden the long-arm statute to reach claims such as those asserted by plaintiffs, it may do so. But this Court may not.

6

Second, plaintiffs argue that defendant's tweet violated Kentucky criminal and harassment statutes, instilling fear in plaintiffs such that the tweet was a "true threat" deemed to have occurred in Kentucky. As this Court held in *Griffin*, this theory finds no support in Kentucky law.

Plaintiffs rely on the same flawed logic they employed in their motion for reconsideration in the *Griffin* case, which goes like this: (1) Kentucky statutes criminalize certain acts of harassment, threatening and menacing; (2) The legislature has provided a civil remedy for the violation of those statutes; and thus; (3) A violation of those statutes constitutes an "act" in Kentucky for personal jurisdiction purposes.  (Doc. 18 at 12). The Court rejects this argument.

First, the fact that a legislature creates a civil cause of action does not, *ipso facto*, answer the question of whether a defendant is subject to personal jurisdiction when sued for such a claim.

Second, even assuming defendant's tweet from New Jersey was a legally cognizable "threat," which the Court doubts, it was not an "act" in Kentucky for purposes of personal jurisdiction.  In the long-arm statute, the Kentucky legislature specifically listed the acts or omissions that will support personal jurisdiction, and it did not include a provision for an out-of-state statement causing harm to a Kentucky citizen as one of those enumerated

7

bases. And, it is clear from other sections of the statute that if the legislature wished to include such a specific basis, it knew how to do so. *See* KRS 454.210(2)(a)(9) (providing personal jurisdiction where a defendant directs a telephone or charitable solicitation *into the Commonwealth*") (emphasis added).

And, the Supreme Court of Kentucky has made it clear that the long-arm statute is the first door through which every plaintiff must pass in order to show that the Court can exercise personal jurisdiction over a defendant. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (2011).

Similarly, the criminal "true threat" cases cited by plaintiffs have no bearing on the question of personal jurisdiction. These cases consider what types of "threats" fall within the ambit of certain federal criminal statutes, and one case concerns simply whether a defendant in a conspiracy drug case may be prosecuted in the state which is the drugs' final destination. *United States v. Eliot*, 876 F.3d 855, 861 (6th Cir. 2017).

Plaintiffs cite no Kentucky authority to support their "true threat" theory, and this Court cannot by judicial decision achieve a result that neither the Kentucky legislature nor Kentucky courts have permitted. The Court thus concludes that plaintiffs have not

8

shown that defendant is subject to personal jurisdiction under the Kentucky long-arm statute for their claims against her.[1]

B. **Due Process**

While the Court need not reach the question of due process given that plaintiffs cannot satisfy the first requirement of *Caesars Showboat*, the Court will make a few observations in the interest of thoroughness and possible appellate review.

First, plaintiffs cite the Supreme Court's "effects test" from *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), and *Calder v. Jones*, 465 U.S. 783 (1984). (Doc. 18 at 13).

In *Walden v. Fiore*, 571 U.S. 277 (2014), however, the Court considered the "minimum contacts" necessary to create specific jurisdiction that satisfies due process, and it specifically rejected the application of the "effects test" that plaintiffs here advocate.

The Court first reviewed several basic principles. "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Second, the minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285.

---

[1] Having so concluded, the Court need not reach defendant's other arguments.

9

Thus, the plaintiff cannot be the only link between the defendant and the forum." *Id.*

And, due process "requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (citation omitted).

The Court then turned to the facts of the case before it and concluded that the defendant in question--a DEA agent who seized money from plaintiffs at the airport in Atlanta—could not be subject to personal jurisdiction in Nevada, where plaintiffs lived. *Id.* at 288. The Court found that the appellate court erred in reasoning that defendant's knowledge of the plaintiffs' strong connections to Nevada, coupled with the foreseeability that they would suffer harm there, satisfied the "minimum contacts" inquiry. *Id.* at 289.

The Court stated:

> This approach to the "minimum contacts" analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis. . . . It also obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself.

10

> **Relying on *Calder*, respondents emphasize that they suffered the "injury" caused by petitioner's allegedly tortious conduct (*i.e.*, the delayed return of their gambling funds) while they were residing in the forum. . . . This emphasis is likewise misplaced. As previously noted, *Calder* makes clear that mere injury to a forum resident is not a sufficient connection to the forum.** Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. **The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.**

*Id.* at 289-90 (emphasis added).

*Walden* thus makes it clear that even if plaintiffs could satisfy the long-arm statute, they could not show that an exercise of personal jurisdiction over defendant would comport with due process. It is a mere fortuity that plaintiffs are residents of Kentucky as it relates to their claims; defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" Kentucky. *Id.* at 289. Plaintiffs are defendant's only connection to Kentucky for purposes of their claims, and *Walden* makes clear that that is insufficient to allow her to be sued here.

The two Sixth Circuit cases that plaintiffs cite are distinguishable because in both cases the defendant challenging personal jurisdiction had specifically directed numerous intentional, fraudulent communications at the plaintiffs themselves in the forum state over considerable periods of time.

11

*See Power Investments, LLC v. SL EC LLC*, 927 F.3d 914 (6th Cir. 2018); *Neal v. Jansen*, 270 F.3d 330 (6th Cir. 2001).

The facts here are qualitatively different. Defendant's tweet did not target Kentucky, and defendant did not avail herself of any benefit in or through Kentucky. In such situations, courts have rejected the notion that due process may be satisfied by tweets that are not specifically directed at a forum state. *See Vangheluwe v. Got News, LLC*, 365 F.Supp.3d 850, 863 (E.D. Mich. 2019) (declining to exercise personal jurisdiction over two defendants who tweeted about plaintiff, a Michigan resident; noting that "[t]hese allegations were not about Michigan in particular but about Joel in particular—wherever he might have been living"); *Edwards v. Schwartz*, 378 F. Supp.3d 468, 494 (W.D. Va. 2019) (declining to exercise personal jurisdiction over defendants who posted about plaintiff on Twitter and other social media platforms, noting "[t]here is no factual matter in Edwards' pleadings suggesting that the authors of these communications took affirmative steps to direct these communications into Virginia or had any intent to target or focus on Virginia readers or otherwise avail themselves of the benefits and protections of the laws of Virginia"); *Planet Aid, Inc. v. Reveal, Center for Investigative Reporting*, Civil Action No. GLR-16-2974, 2017 WL 2778825, at *10 (D. Md. June 26, 2017) ("Sending three tweets and four emails related to the Podcasts and the Articles over a period of a year

12

and a half are not "so substantial that 'they amount to a surrogate' " for Smith and Walters's presence in Maryland").

Certainly, plaintiffs, as Kentucky residents, have substantial connections in this forum. But, as the Court of Appeals of Kentucky recently emphasized, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *H.E.B., LLC v. Jackson Walker, L.L.P.*, 587 S.W.3d 333, 342 (Ky. Ct. App. 2019) (quoting *Walden v. Fiore*, 571 U.S. 277, 291 (2014)).

Therefore, the Court concludes that an exercise of personal jurisdiction over defendant in this matter would not comport with due process.

Thus, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that defendant's motion to dismiss (Doc. 12) be, and is hereby, **GRANTED**. A separate judgment shall enter concurrently herewith.

This 25th day of June 2020.



Signed By:
*William O. Bertelsman* WOB
United States District Judge